IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 1, 2012

**JARVIS McCLAIN v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 09-03569     Carolyn Wade Blackett, Judge**

**No. W2011-02124-CCA-R3-PC  - Filed February 14, 2013**

Petitioner, Jarvis McClain, entered a guilty plea in the Shelby County Criminal Court to especially aggravated robbery and received the agreed-upon sentence of thirteen and one-half years in prison as a mitigated offender to be served at 100% release eligibility. He filed a petition for post-conviction relief, which was denied after an evidentiary hearing. In this appeal, petitioner claims that trial counsel was ineffective for several reasons: (1) failing to explain the terms of his plea agreement; (2) failing to explain the range of punishment for the offense for which petitioner was indicted; and (3) failing to disclose to petitioner evidence discovered by the investigator. He also claims that the ineffective assistance of counsel rendered his guilty plea involuntary. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Zipporah C. Williams, Memphis, Tennessee, for the appellant, Jarvis McClain.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel; Amy P. Weirich, District Attorney General; and Lora Fowler, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I.  Facts and Procedural History

The State recited the following factual basis underlying petitioner's January 15, 2010 guilty plea:

Had [petitioner] gone forward to trial[,] the [S]tate would have shown that on September 25, 2008, the victim, Mr. Thomas, was walking from Castle (phonetically) Convenient [sic] Store, which is located at 2512 Park, which is located in Memphis, Shelby County, when he was approached by an acquaintance by the name of Jarvis McClain, who demanded money from him at gunpoint.

[The victim] attempted to run, at which time he was shot twice in the leg. [Petitioner] then caught up with [the victim], they struggled over the gun, but [the victim] in the end lost that battle and a sum of money was taken from [the victim's] possession.

[Petitioner] then jumped into a car with another acquaintance of [the victim], a Timothy Jones[,] and did leave the scene.

At that time, trial counsel informed the court that petitioner did not stipulate to the "exact facts" as read, but he wished to enter a best-interest plea. The plea colloquy followed:

THE COURT: [T]his is a petition for waiver of trial by jury and a request for the acceptance of a guilty plea, did you sign this?

PETITIONER: Yes, sir.

THE COURT: [Did trial counsel] go over this with you and explain it to you?

PETITIONER: Yes, sir.

THE COURT: Do you understand it?

PETITIONER: Yes, sir.

THE COURT: Do you understand what you are charged with?

PETITIONER: Yes, sir.

THE COURT: Do you understand what you're pleading guilty to?

PETITIONER: Yes, sir.

THE COURT:        Do you have any question, at all, about the charges?

PETITIONER:       No, sir.

THE COURT:        You understand you don't have to plead guilty, you do have a right to go to trial?

PETITIONER:       Yes, sir.

. . . .

THE COURT:        You have a right to have a sentencing hearing. If you got convicted on this[,] you could have been facing anywhere from fifteen to sixty years in the penitentiary, do you understand that?

PETITIONER:       Yes, sir.

THE COURT:        Also, you need to understand that this offense is a violent offense[,] and the punishment is without parole. You have to be served [sic] at 100%[,] there is no parole, do you understand that?

PETITIONER:       Yes, sir.

. . . .

THE COURT:        Is [pleading guilty] what you want to do?

PETITIONER:       Yes, sir.

THE COURT:        Is anybody making you plead guilty?

PETITIONER:       No, sir.

THE COURT:        Do you understand that this is going to be on your record, if you get arrested again?

PETITIONER:       Yes, sir.

-3-

THE COURT:  You need to understand, first, that this is a crime of violence, which means in the future if you get arrested for other crimes of violence, this conviction could be used to increase your punishment for life in prison, do you understand that?

PETITIONER:  Yes, sir.

. . . .

THE COURT:  Are you satisfied with [trial counsel] and what she's done for you?

PETITIONER:  Yes, sir.

THE COURT:  Have any complaints about her?

PETITIONER:  No, sir.

THE COURT:  Do you have any questions, at all, about what you're doing?

PETITIONER:  No, sir.

THE COURT:  This what you want to do?

PETITIONER:  Yes, sir.

THE COURT:  Are you sure?

PETITIONER:  Yes, sir.

The trial court determined that petitioner entered his guilty plea freely and voluntarily, without threats or coercion, and accepted the plea.

Petitioner filed a timely petition for post-conviction relief and a subsequent amended petition after appointment of private counsel in which he alleged that his guilty plea was not knowingly entered and that trial counsel was ineffective for failing to fully advise him of the details of his plea agreement. The post-conviction court held a hearing on August 9, 2011,

-4-

and denied relief by written order dated September 14, 2011. At the hearing, the court heard the following evidence:

Petitioner testified that he entered a guilty plea to one count of especially aggravated robbery in exchange for the agreed-upon sentence of thirteen and one-half years in prison to be served at 100%. He stated that he received a discovery packet from trial counsel and reviewed portions of it with her. He met with trial counsel every time he had a court date. When petitioner had to decide whether to plead guilty or stand trial, trial counsel met with him to discuss his options. Petitioner asked questions of trial counsel, which she answered. Trial counsel informed petitioner that she had retained an investigator to assist in preparing his case. One of the investigator's tasks was to visit the neighborhood, inquire about the victim, and investigate the store that was the scene of the crime. Petitioner stated that trial counsel "only briefly" reported the investigator's findings to him. He said that the investigator learned that the victim was a known drug dealer but nothing more. After petitioner entered the guilty plea, he learned that the victim had been incarcerated several times and that he had a pending drug charge. Petitioner claimed that had the information concerning the victim's criminal history been known to him prior to pleading guilty, he would not have entered the plea.

Petitioner explained that his sentence, as he understood it, was thirteen and one-half years at 100%, "but by law they take fifteen percent, so it's eighty-five. So . . . at – thirteen point five[,] I'm looking anywhere to do about ten years before I even see the streets." Petitioner testified that trial counsel did not explain the sentence to him but simply instructed him to "sign for the thirteen or go to trial." He then corrected his testimony, saying that trial counsel explained to him that he was going to serve day-for-day because the sentence was to be served at 100%. Petitioner denied having any learning disabilities or mental health issues but stated that he could not understand some of the things trial counsel tried to explain to him about his plea. He stated that trial counsel tried to "break it down" as best as she could so he could understand.

Petitioner testified that other than a juvenile charge, he did not have a criminal history and did not have pending cases when he entered the guilty plea. He claimed that trial counsel did not explain to him how his record would affect sentencing. He said that trial counsel told him that if he did not accept the State's plea offer, he could be facing life in prison. He agreed that he entered a "best interest" plea. Petitioner recalled reviewing the plea agreement paperwork with trial counsel prior to entering the courtroom. He also recalled answering affirmatively when the trial court asked him if he understood the terms of the plea. However, petitioner testified that he entered the plea because he "felt like that was [his] only option" and because "[t]hirteen sound[ed] better than life. . . ." He did not inform the trial court that he did not understand the plea or halt the plea submission hearing because "[his] mind wasn't

-5-

even set right at the time." He claimed that he felt railroaded on a charge in which he had no involvement but said that he reasoned, "[W]hy not take the lesser and try to fight it and get back in court . . . [?]" Petitioner testified that if he had more time to discuss the plea with trial counsel, he would have declined the plea and proceeded to trial.

On cross-examination, petitioner claimed that he did not give a statement to law enforcement admitting his participation in the robbery, although he admitted signing a statement to that effect and initialing each page of the statement. He stated that he was intoxicated when he gave the statement, which was why his attorney filed a motion to suppress it. Petitioner maintained that he had no adult criminal record, claiming that two aggravated robbery convictions entered on different dates on his adult criminal history were the result of offenses he committed as a juvenile. He further admitted he was on parole when he committed the offense in the instant case.

Petitioner acknowledged that trial counsel reviewed relevant discovery materials with him. However, he stated that she did not explain to him that he could receive a sentence of twenty-five to forty years at 100% if he went to trial and was convicted. He maintained that trial counsel told him he could receive life in prison because of his record. Petitioner recalled that during the plea colloquy, the trial court informed him that he could face fifteen to sixty years in confinement and that the instant conviction could be used to enhance any future sentence on a new conviction.

The State questioned petitioner with regard to a letter he wrote to trial counsel in which he stated that trial counsel advised him he was facing between twenty-five and forty years in prison. Petitioner testified that despite the letter he wrote, trial counsel did not so inform him, and he learned his possible sentence from fellow prisoners in jail. He confirmed that during the plea submission hearing, he told the trial court that he was satisfied with trial counsel's representation of him. Petitioner admitted that he knew he "was facing a lot of time if [he] didn't sign for that thirteen-[year sentence]," so he decided it was in his best interest to accept the plea offer of thirteen and one-half years. Trial counsel told petitioner that his prior convictions could be used to enhance his sentence in the present case if he chose to go to trial. Petitioner testified that when the trial court advised him he would relinquish his right to a jury trial if he entered a guilty plea, he was "basically lost and confused," but he did not tell the court that he did not understand.

On recross-examination, petitioner admitted that he was a juvenile when he was charged with the two aggravated robberies, but the case was transferred to criminal court, and he pleaded guilty as an adult.

Trial counsel testified that she recalled petitioner's case. She remembered receiving discovery materials and reviewing them with petitioner. The State's first plea offer involved a sentence of twenty years at 100% release eligibility. After negotiations, the State extended a second offer of thirteen and one-half years. Trial counsel informed petitioner that the prosecutor in his case would change the following January, and she could not guarantee that the offer would remain the same. She advised petitioner to seriously consider the offer during the court's holiday break.

Trial counsel recalled that during a meeting with petitioner, she discussed with him that her investigator had discovered that the victim was a drug dealer. Trial counsel reviewed the letter she received from petitioner and confirmed that she had advised petitioner that "because he had three prior aggravated robbery convictions[,] . . . he would be range 2 on a Class A felony[,] and if convicted at trial[,] he would get twenty-five to forty years."

Trial counsel confirmed that she filed a motion to suppress petitioner's statement but that the court never held a hearing on it. Prior to the date set for the hearing, trial counsel received the reduced plea offer from the State, and petitioner elected to accept it. She clarified that when petitioner spoke of her advising him that he would receive "life," he referred to a conversation wherein she advised him that if he received a subsequent conviction, it would be a "three strikes" case, and he would receive a sentence of life in prison without the possibility of parole. She did not advise petitioner that if he did not plead guilty in the instant case, he would be sentenced to life in prison. She advised petitioner that his thirteen and one-half year sentence would be served at 100%. Trial counsel testified that she would have advised petitioner, as she advised all of her clients, that it was his choice to accept the plea offer or proceed to trial. She would have informed him that the plea offer in his case "hedge[d] his risk" and that she could not be certain what a jury of "twelve different minds" would do at trial. Trial counsel stated that petitioner maintained his innocence of the offense, so she explained the concept of a "best interest" plea. Trial counsel testified on cross-examination that she could not recall how many times she met with petitioner, although she believed that it was likely more often than with the average client.

II. Analysis

Petitioner challenges his guilty-pleaded conviction and resulting sentence on four grounds: (1) that trial counsel was ineffective in failing to advise him of the length of the sentence and the minimum to be served to which he was agreeing; (2) that trial counsel was ineffective in failing to explain to him the range of punishment for the offense if he proceeded to trial; (3) that trial counsel was ineffective in failing to disclose to him the evidence discovered by the investigator, thereby depriving him of the ability to consider said

evidence in deciding whether to enter a guilty plea; and (4) that as a result of trial counsel's malfeasances, his plea was not knowingly entered.

## A. Ineffective Assistance of Counsel

### 1. Standard of Review

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2012). A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2012). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the trial court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the trial judge as the trier of fact. *R.D.S*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App.1997)). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is *de novo* with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citations omitted). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v State*, 202 S.W.3d 106, 116 (Tenn. 2006)). As our supreme court has previously held:

> "[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

*Id.* at 315-16 (quoting *Baxter*, 523 S.W.2d at 934-35). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

### 2. Trial Counsel's Alleged Failure to Explain
### the Terms of Petitioner's Plea Agreement

Petitioner alleges that trial counsel rendered ineffective assistance of counsel by failing to advise him of the length of the sentence and the minimum time to be served under the terms of the plea agreement.

In denying relief, the post-conviction court did not clearly address this claim of ineffective assistance of counsel. Although not specifically addressed, we note that in the concluding paragraph of the order, the post-conviction court determined that petitioner failed to carry his burden of proof. *See Kardius Wilkes*, No. W2009-1476-CCA-R3-PC, 2010 WL 3293726, at *5 (Tenn. Crim. App. Aug. 18, 2010) (affirming post-conviction court's denial

of relief even though it did not specifically address each issue in its order but found that petitioner failed to prove his factual claims by clear and convincing evidence).

With regard to this issue, petitioner acknowledged that trial counsel explained to him that he was going to serve his sentence day-for-day because it was to be served at 100%. He also stated that "[t]hirteen sound[ed] better than life. . . ."  In her testimony, trial counsel confirmed that she advised petitioner to consider the State's second plea offer of thirteen and one-half years because when the prosecutors rotated courtrooms the following January, she could not guarantee that the offer would remain the same.  Thus, from both petitioner's own testimony and trial counsel's testimony, it is clear that petitioner was aware that the plea agreement provided for a sentence of thirteen and one-half years to be served at 100%.  He has failed to prove by clear and convincing evidence that trial counsel rendered deficient performance in failing to so advise him.  *See* Tenn. Code Ann. § 40-30-110(f) (2012). Petitioner is not entitled to relief on this issue.

### 3.  Trial Counsel's Alleged Failure to Explain the Range of Punishment for the Offense for which Petitioner was Indicted

Petitioner maintains that trial counsel rendered ineffective assistance of counsel by failing to explain to him the range of punishment of the offense for which he was indicted. In denying relief on this claim of error, the post-conviction court wrote:

> Petitioner entered a plea of guilty to Especially Aggravated Robbery.  Before the guilty plea was entered, Petitioner stated that he understood his rights and all the rights he was giving up as a result of entering a guilty plea.  At the Post-Conviction Relief hearing, the Petitioner testified that he entered a guilty plea to avoid a harsher sentence.  He also testified that before accepting the guilty plea, he thought, "I was looking at it[,] why not take the lesser and try to fight it and get back in court. . . .[?]"  It is obvious from Petitioner's own testimony that he knew about post-conviction relief[,] so he took the lesser sentence and planned to file for relief.  Trial Counsel advised Petitioner that if he was convicted at trial, his sentence would have been much longer than thirteen years and allowed Petitioner to consider his options for over a month before making a decision.  Petitioner ultimately decided that because he would otherwise face a lot of time, it was in his best interest to plead guilty.

In addition, petitioner wrote a letter to trial counsel in which he referenced the fact that she had informed him that he faced a possible sentence of twenty-five to forty years. Although petitioner claimed during his testimony at the evidentiary hearing that trial counsel had not informed him of the possible sentence and that he learned this information from

fellow inmates, trial counsel's testimony confirmed that she advised petitioner of the range of punishment that he would face if convicted at trial. The post-conviction court accredited trial counsel's testimony.

The record does not preponderate against the post-conviction court's findings of fact. *See Berry*, 366 S.W.3d at 169 (citations omitted). We agree that petitioner has failed to establish by clear and convincing evidence that his trial counsel rendered ineffective assistance of counsel with regard to this claim of error. *See* Tenn. Code Ann. § 40-30-110(f) (2012). He is not entitled to relief.

### 4. Trial Counsel's Alleged Failure to Disclose to Petitioner Evidence Discovered by the Investigator

Petitioner claims that trial counsel rendered ineffective assistance of counsel in failing to disclose to him certain evidence that was discovered by the investigator who worked on his case. This failure, he maintains, resulted in prejudice because it deprived him of the ability to consider said evidence and make a knowing decision with regard to whether to plead guilty.

In denying relief on this claim, the post-conviction court wrote:

By Petitioner's own testimony, he acknowledges that prior to the guilty plea, Trial Counsel discussed the information obtained by the investigator[,] except that the victim was previously incarcerated and had a pending charge. This does not alter the conclusion that Petitioner knowingly and voluntarily entered his guilty plea. Petitioner failed to show that Trial Counsel's acts were so serious as to fall below an objective standard of reasonableness or that Trial Counsel's actions caused Petitioner to involuntarily and unknowingly enter a guilty plea that he would not have otherwise entered.

We cannot conclude that trial counsel's performance was deficient. Trial counsel testified that she advised petitioner that the victim was a known drug dealer. The facts of the victim's prior convictions and pending criminal offense were not so serious as to rise to the level of deficient performance of trial counsel for failure to advise petitioner of them. Moreover, the post-conviction court also noted that while petitioner did not know about the victim's pending charge or previous incarceration, he had the necessary information about the victim's illegal drug activity to render an informed decision to plead guilty. We deny petitioner relief on this claim.

### B. Voluntariness of Guilty Plea

It is axiomatic that a guilty plea must be entered knowingly, voluntarily, and intelligently. *Lane*, 316 S.W.3d at 562; *see North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). If a plea is not knowingly, voluntarily, and intelligently entered, the guilty plea is void because appellant has been denied due process. *Lane*, 316 S.W.3d at 562 (citing *Boykin*, 395 U.S. at 243 n.5).

Petitioner's claim that his guilty plea was involuntary is based solely on the instances of ineffective assistance of counsel enumerated above. Having determined that his claims of ineffective assistance of counsel are meritless, we reject his challenge to the voluntariness of his guilty plea based on the same grounds.

## CONCLUSION

After a thorough review of the record, the parties' briefs, and the applicable case law, we affirm the judgment of the post-conviction court.

_____

ROGER A. PAGE, JUDGE